UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ANAKA HUNTER, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 4:12CV00004 ERW |
| | ) |
| CITY OF SALEM, MISSOURI, | ) |
| BOARD OF TRUSTEES, SALEM PUBLIC | ) |
| LIBRARY, a body corporate, and | ) |
| GLENDA WOFFORD, Individually and | ) |
| in her official capacity as | ) |
| Director of the Salem Public Library, | ) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant City of Salem, Missouri's ("City") Motion to Dismiss [ECF No. 18].

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The Court accepts as true the following well-pleaded facts alleged in Plaintiff's complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, ___,129 S. Ct. 1937, 1949 (2009). Beginning in July 2010, Plaintiff Anaka Hunter utilized the computers and internet access at the Salem Public Library ("Library") to conduct research on Native American spirituality and the Wiccan Church. The Library, a public library located in Salem, Missouri, was established pursuant to Missouri Revised Statutes § 182.140. Property taxes collected by Salem primarily fund the Library. The City's Major appoints members to the Library's Board of Trustees and retains the right to remove members of the Board.

The Library utilizes an Internet Content Filtering ("ICF") system called Netsweeper. The Library is required by federal and Missouri state law to take measures to limit minors ability to access to obscene materials, child pornography, or material harmful to minors. Children's Internet Protection Act (CIPA), 20 U.S.C. § 9134(f); Mo. Rev Stat. § 182.827.3. The ICF system blocked

access to many websites Plaintiff was trying to access. Plaintiff asked Defendant Glenda Wofford, director of the Library and ICF administrator, to unblock the websites. Wofford responded that the ICF system determined what the library patrons could view. Wofford explained that she only allows people to view blocked websites if it pertains to their job, if they are writing a paper, or if she determined that they otherwise have a legitimate reason to view the content. Wofford also mentioned that she had an obligation to contact the appropriate authorities to report those individuals who attempted to access blocked sites if she thought the individual would misuse the information he or she was attempting to access. Plaintiff construed this comment as a threat that she would be reported to police if she continued to try to access these blocked websites.

Plaintiff then attended a Library Board of Trustees meeting. At the meeting, Plaintiff described her experience and explained that she believed the filtering blocked religious content based upon its viewpoint. The Board responded that the Library's ICF system would not change.

Plaintiff filed a lawsuit against Defendants City of Salem, Salem Public Library Board of Trustees, and Wofford, individually and in her official capacity, under 42 U.S.C. § 1983[1] [ECF No. 1]. Specifically, the Complaint alleges that 1) "Defendants' policies, practices, and customs regarding blocking websites beyond what is required by CIPA or Mo. Rev. Stat. § 182.827.3 are content- and viewpoint-based restrictions on access to speech protected by the First Amendment[,]" and these policies, practices, and customs have injured Plaintiff; and 2) "Defendants' policies, practices, and customs of blocking certain religious websited categorized as 'occult' or 'criminal skills' and the simultaneous decision to allow access to the websites of more mainstream religions"

---

[1] "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]"

2

has the effect of promoting and favoring one religious viewpoint over another thereby violating her constitutional rights, that is, the Establishment Clause of the First Amendment. *Id*. at ¶¶ 63-75. Plaintiff requests a declaratory judgment finding that Defendants' acts, policies, practices and customs are unconstitutional; a permanent injunction enjoining Defendants' from continuing to enforce or implement these policies and customs; nominal damages for deprivation of her constitutional rights; and costs pursuant to 42 U.S.C. § 1988. *Id* at. ¶ 76.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a claim for relief for "failure to state a claim upon which relief may be granted." The notice pleading standard of Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to give "a short and plain statement showing that the pleader is entitled to relief." In order to meet this standard and to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotations and citation omitted). This requirement of facial plausibility means that the factual content of the plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cole v. Homier Distrib. Co.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Iqbal*, 129 S. Ct. at 1949). Furthermore, courts must assess the plausibility of a given claim with reference to the plaintiff's allegations as a whole, not in terms of the plausibility of each individual allegation. *Zoltek Corp. v. Structural Polymer Group*, 592 F.3d 893, 896 n.4 (8th Cir. 2010) (internal citation omitted). This inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950.

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal alterations and citations omitted); *see also Iqbal*, 129 S. Ct. at 1950 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'") (quoting Fed. R. Civ. P. 8(a)(2)). Nevertheless, although the "plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a sheer possibility," it is not a "probability requirement." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (citing *Iqbal*, 129 S. Ct. at 1949). As such, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely," *id.* (quoting *Twombly*, 550 U.S. at 556) (internal quotations omitted), provided that the complaint contains sufficient facts to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted).

Thus, in sum, these considerations suggest a two-step analysis under which the court may first (1) identify whether the complaint contains pleadings that are "more than conclusions," and that the court can therefore treat as factual allegations entitled to "the assumption of truth," and if it does, (2) "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1950.

To bring an actionable civil rights claim under 42 U.S.C. § 1983, a plaintiff must allege a set of historical facts, which, if proven true, would demonstrate that the named defendants violated the

4

plaintiff's federal constitutional rights while acting under color of law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Furthermore, "[l]iability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights" protected by the Constitution. *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). Therefore, a civil rights plaintiff must plead facts showing each named defendant's personal involvement in alleged constitutional wrongdoing. *Ellis v. Norris*, 179 F.3d 1078, 1079 (8th Cir. 1999). *See also Beck v. LaFleur*, 257 F.3d 764, 766 (8th Cir. 2001) (upholding summary dismissal of civil rights claims, because plaintiff's complaint "failed to allege sufficient personal involvement by any of defendants to support such a claim").

A municipality may be liable as a "person" under § 1983, but it cannot be held liable on a respondeat superior theory. *Monell v. Dep't of Soc. Servs. of New York City*, 436 U.S. 658, 690-91 (1978). "[M]unicipalities do not enjoy immunity from suit – either absolute or qualified – under § 1983. . . . [B]ut it cannot be held liable unless a municipal policy or custom caused the constitutional injury." *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166 (1993); *see also Mettler v. Whitledge*, 165 F.3d 1197 (8th Cir.1999); *Doe By and Through Doe v. Washington Cnty.*, 150 F.3d 920, 922 (8th Cir. 1998). In order for a municipal policy or custom to be the cause of the constitutional injury, it must be "the moving force of the constitutional violation." *Monell*, 436 U.S. at 694.

The terms "policy" and "custom" are not interchangeable. *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir.1999). A "policy" is "an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Id*. Such a "policy" could result from "a single decision taken by the highest officials responsible for setting policy in that area of the government's business." *City of St. Louis v. Praprotnik*, 485 U .S. 112, 123 (1988).

A "custom" requires three showings: (1) the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the government entity's employees"; (2) "[d]eliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct"; and (3) the plaintiff was injured by acts pursuant to the government entity's custom. *Mettler*, 165 F.3d at 1204. "Although a single unconstitutional act may not always suffice to support a claim of municipal liability, *see City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality opinion), 'an unconstitutional governmental policy could be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business.'" *Bernini v. City of St. Paul*, 665 F.3d 997, 1007 (8th Cir. 2012) (quoting *Praprotnik*, 485 U.S. at 123)). The evaluation of a whether a person can be considered a policymaker is a question of state law. *Praprotnik*, 485 U.S. at 124–25 (holding that "the identification of policymaking officials is a question of state law").

## III.  DISCUSSION

The City argues that under Missouri law, the Library is a separate political subdivision, the City retains no control over the Library, and the actions of the Library are not those of the City. In addition, the Complaint does not contain factual allegations that show that the Library's policies, practices, and customs should be imputed to the City. Therefore, as a matter of law, the claims against it must be dismissed with prejudice. Plaintiff responds that she has sufficiently stated a claim against the City on which relief may be granted under § 1983 because under Missouri law, the City maintains control over the operation of the Library.

Plaintiff has not sufficiently pleaded facts to satisfy the requirements of *Iqbal* and *Monell*. The Complaint [ECF No. 1] specifically references the City of Salem in paragraph 7 and 8. Paragraph 7 states that the Library is funded by property taxes collected by the City, Mo. Rev. Stat.

§ 182.140, and paragraph 8 avers that the City's Major appoints the Library's Board members, Mo. Rev. Stat. § 182.200. These facts plausibly allege that Salem has some control over the Board's membership, but they do not allege that the Library Board or Wofford are policymakers of the City.

The Complaint alleges facts that plausible show that the Library Board of Trustees and Wofford implemented a policy or custom of blocking websites that did not need to be blocked under CIPA or Missouri state law and, in doing so, Wofford and the Library Board deprived Plaintiff of her First Amendment rights. The Complaint sufficiently avers that Wofford and the Library Board are either responsible for creating the policy, or through acquiescence, implementing the custom. Plaintiff has not alleged facts that show that Wofford or the Library Board are policymakers of the City, that is, that either Wofford or the Library Board are "the highest officials responsible for setting policy in that area of the government's business." *Praprotnik*, 485 U.S. at 123. Therefore, under *Iqbal* and *Monell*, Plaintiff has failed to state a claim on which relief can be granted against the City.

In addition to the City's argument that Plaintiff has not satisfied the *Iqbal*/*Monell* requirements, the City argues that "under Missouri law, a city library becomes a separate entity upon appointment of the board of trustees, and operates autonomously and without direction or oversight from a city," *Id*. at 3, and therefore, "the Library's policies, practices, customs and usages are not those of the City for purposes of liability under § 1983." *Id*. at 5. The City seems to be arguing, in a circuitous fashion, that the City cannot be responsible for any action of the Library Board because the Library Board is independent of the City and does not make policy for the City.

A few provisions of the Missouri Revised Statutes suggest that the City retains some control over the Library and its Board of Trustees. For example, § 182.170 gives authority to the City Major to appoint the Library's Board of Trustees:

> When any city establishes and maintains a public library under sections 182.140 to 182.301, the mayor or other proper official of the city, with the approval of the

legislative branch of the city government, shall proceed to appoint a library board of nine trustees, chosen from the citizens at large, with reference to their fitness for the office. No member of the city government shall be a member of the board.

Section 182.180 gives the City Major continuing authority to appoint Board Trustees and to remove members of the Board "for misconduct or neglect of duty":

The trustees shall hold office, one-third for one year, one-third for two years and one-third for three years from the first of July following their appointment, and at their first regular meeting shall cast lots for the respective terms; and annually thereafter the mayor or other proper official, before the first of July of each year, shall appoint three trustees, who shall hold office for three years. The mayor or other proper official, by and with the consent of the legislative branch of the city government, may remove any trustee for misconduct or neglect of duty.

Lastly, § 182.240 gives the governing body of the City the ability to pass ordinances that will punish individuals who injury library property, including library books.

Other provisions of Missouri law suggest that the City does not retain control over the Library and its Board. Section 182.140.3 states that once a majority of the city votes affirmatively for the levying of a city tax for the creation of a free public library, "thereafter the free public library shall be established, and *shall be a body corporate*, and known as such." (Emphasis added). Section 182.200 authorizes the appointed trustees to elect officers, draft and adopt bylaws, appoint a librarian, and have exclusive control over the moneys collected "to the credit of library fund." Section 182.200.4 states that "[a]ll moneys received for the library shall be deposited in the city treasury to the credit of the city library fund, and shall be kept separate and apart from other moneys of the city." Section 182.200.5 allows the Board of Trustees, "a body corporate," to sue and be sued as well as make property acquisitions, issue bonds, and receive gifts of property for the benefit of the library.

Missouri courts have not addressed the issue of whether a municipality retains control and oversight over a city library organized under Mo. Rev. Stat. § 182.140 *et seq.* However, Missouri

8

case law still provides guidance on the issue. The Missouri Supreme Court has noted that some Missouri statutes give various boards independence from the city in which it resides and provides services. *State ex rel. Bd. of Trs. of the City of N. Kansas City Mem'l Hosp. v. Russell*, 843 S.W.2d 353, 365-57 (Mo. 1992) (en banc). At issue in *State ex rel. Board of Trustees* was whether the city hospital board was a public entity for purposes of sovereign immunity or merely a part of the city. *Id*. at 355. "The [Missouri Revised] statutes contain other examples of independent entities that might be created by the citizenry, such as the city library district, which 'shall be a body corporate.'" *Id*. at 357 (citing Mo. Rev. Stat. § 182.140). The court noted that "[n]ot all of the statutes defining some part of government create 'entities[,]'" because some enabling statutes only govern the operation of parts of city government and grant no corporate existence or political subdivision status. *Id*. The court also stated that the power to sue and be sued gives a board entity status. *Id*. Because the board at issue (a hospital board) lacked any separate corporate existence or political subdivision status, that board was not a separate and distinct entity but a part of the city in which it resides, and, therefore "enjoys the immunity the [c]ity would enjoy." *Id*.

By extension of this case law, the Library Board in this case has a separate and distinct existence from the City by the nature of its enabling statutes deeming it "a body corporate." Mo. Rev. Stat. § 182.200.5. The Library Board also has the right to sue and be sued. *Id*. Thus, under Missouri law, Library Board is a entity in its own right, not a part of the City.

The City cites to an advisory opinion of the Missouri Attorney General as persuasive authority for the proposition that a municipality does not retain control and oversight over such a city library. Opinions of the Attorney General provide guidance on a issue, but are not binding authority because the Attorney General lacks the power "to make or declare the law." *Comm. for a Healthy Future, Inc. v. Carnahan*, 201 S.W.3d 503, 510 n.4 (Mo. 2006) (per curiam). Advisory Opinion 20-

9

72 concludes that "governing boards of county, city-county, and municipal libraries are vested with the administrative authority of such libraries and are not under the direction of the officers or governing bodies of such cities or counties." Op. Mo. Att'y Gen. 20-72. Advisory Opinion 20-72 notes that "such library boards are bodies corporate . . . Nowhere do we find any reservation of powers to the governing body of the cities, . . . or the respective officials of such cities[.]"

After reviewing the Library Board's enabling statutes, Missouri cases, and Advisory Opinion 20-72, the Court is convinced that as a matter of Missouri law, the Library Board is a separate, suable entity from the City. Moreover, the Court finds Advisory Opinion 20-72 persuasive. Under Missouri law, the City retains no control over the Library Board or Wofford, therefore, neither can be policymakers of the City. Therefore, the claims against the City will be dismissed with prejudice.

## IV. CONCLUSION

Plaintiff has not satisfied the pleading requirements of *Iqbal* and *Monell*. Under Missouri law, the City retains no control over the Library Board or Wofford, the Library Board or Wofford cannot be policymakers. Therefore, the claims against the City will be dismissed with prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant the City of Salem's Motion to Dismiss [ECF No. 18] is **GRANTED**.

**IT IS FURTHER ORDERED** that all claims against Defendant the City of Salem shall be **DISMISSED WITH PREJUDICE**.

Dated this  11th  day of April, 2012.

E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE